

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00154-CR

GABRIEL LOUIS MENDOZA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd District Court
Dallas County, Texas
Trial Court No. F12-55613-T

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Gabriel Louis Mendoza was convicted of aggravated robbery with a deadly weapon, was sentenced to twenty years' imprisonment, and was ordered to pay $244.00 in court costs. On appeal,[1] Mendoza argues (1) that the evidence is legally insufficient to support the trial court's judgment, (2) that the evidence is insufficient to support the award of court costs in the absence of a bill of costs, and (3) that the trial court's judgment incorrectly reflects that he pled guilty to the offense.[2] We find that legally sufficient evidence supports Mendoza's conviction and that the filing of a supplemental clerk's record, which supports the amount of court costs assessed against Mendoza, renders his second point of error moot. However, we must modify the trial court's judgment because it incorrectly reflects that Mendoza pled guilty to the offense. We affirm the trial court's judgment, as modified.

## I. The Evidence Is Legally Sufficient to Support Mendoza's Conviction

### A. Standard of Review

In evaluating legal sufficiency in this bench trial, we review all the evidence in the light most favorable to the fact-finder's verdict to determine whether any rational fact-finder could have found that Mendoza committed aggravated robbery with a deadly weapon beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—

---

[1]Originally appealed to the Fifth Court of Appeals in Dallas, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Fifth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

[2]Mendoza also appeals his conviction on another charge of aggravated robbery with a deadly weapon in our cause number 06-13-00153-CR.

Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* Here, the State was required to prove that (1) Mendoza, (2) in the course of committing theft and (3) with the intent to obtain or maintain control of Mary Kathleen Miller's property, (4) intentionally or knowingly (5) threatened Miller with, or placed Miller in fear of, (6) imminent bodily injury or death while (7) using or exhibiting (8) a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 29.02–.03 (West 2011).

## B.     The Evidence

Miller testified that a young Hispanic male robbed her at gunpoint in her driveway. According to Miller, the man had short hair, was approximately five feet, nine inches tall, was thin and muscular, and was wearing a dark gray or black bandana over his face. Miller recounted that, while pointing a gun in her face, the man instructed her to quickly surrender her cash, purse, keys, and any other belongings. The man collected Miller's items and ran away.

3

At trial, Miller testified that Mendoza's build was similar to the build of the man that robbed her. However, because the robber wore a bandana across his face, Miller could not positively identify Mendoza as the perpetrator. Miller testified that the robber stole several items, including her driver's license, a Wells Fargo credit card, a Compass Bank credit card, and a Walmart gift card bearing the words, "Merry Christmas." Miller further testified that the robber fled on foot and that she did not see him get into a vehicle.

A few hours after Miller was robbed, Pablo Banda was robbed outside of his apartment by two young Hispanic males. Like Miller, Banda was threatened with a gun; unlike Miller, he was beaten by both men during the robbery. Banda surrendered his cell phone and cash, including two two-dollar bills. According to Banda, the robbers then jumped into a black Chevrolet Silverado truck and fled; Banda immediately notified the police. At trial, Banda positively identified Mendoza as the robber that was carrying a gun.

Soon after Banda had been robbed, Officer Daniel Razo was informed by dispatch to be on the lookout for a black Chevrolet Silverado truck. Four minutes later, Razo saw the vehicle at a 7-Eleven located less than one-half mile from Banda's apartment. Before he could investigate, the robbers spotted Razo's police car and fled in the black truck, driving erratically. Razo gave chase, and the truck eventually lost control, spun, and collided into an embankment. Undeterred, the robbers exited the vehicle and continued their flight on foot.

Razo caught up to and apprehended Alejandro Sierra, a heavy-set Hispanic man weighing approximately 200 pounds. Razo found Miller's Compass Bank credit card and Banda's two two-dollar bills on Sierra's person. Officer Jason Arozamena caught up to and apprehended

4

Mendoza, who was described as being thinner than Sierra. On Mendoza's person, Arozamena found $1,239.00 in cash and a Walmart gift card bearing the words, "Merry Christmas."[3] He also found Miller's driver's license and Banda's cell phone in the Chevrolet Silverado. The truck was registered to one of Sierra's parents.

At his trial, Mendoza denied having any involvement in Miller's robbery. Mendoza testified that Sierra gave him the Walmart gift card and that the mother of his child gave him the $1,239.00 in cash. However, Mendoza also testified that he and Sierra were using Miller's credit card at the 7-Eleven to fill up gas tanks for strangers who gave them cash in exchange.

### C. The Evidence Was Legally Sufficient

"[T]he State may prove the defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence." *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). Mendoza challenges the element of identity since Miller could not positively identify him as the robber at trial. In particular, Mendoza argues that the presence of the Walmart gift card on his person was insufficient to connect him to the Miller robbery. We disagree that the evidence is insufficient to make this connection.

A few hours after Miller was robbed, some of Miller's stolen items were recovered from Mendoza and Sierra, and from the truck they were occupying. Mendoza and Sierra were using Miller's credit cards to pump gas for strangers at the 7-Eleven in exchange for cash. A defendant's unexplained possession of property recently stolen in a burglary permits an inference

---

[3]Miller identified the Walmart card as hers.

that the defendant is the one who committed the burglary. *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006); *Chavez v. State*, 843 S.W.2d 586, 587–88 (Tex. Crim. App. 1992) (en banc); *Girard v. State*, 631 S.W.2d 162, 164 (Tex. Crim. App. [Panel Op.] 1982) (holding shorter the interval between theft and possession of stolen property, stronger the evidence of guilt for robbery); *Taylor v. State*, 859 S.W.2d 466, 468 (Tex. App.—Dallas 1993, no pet.).

In this case, however, the possession of Miller's property by Mendoza was not unexplained. Mendoza blamed the robbery on Sierra. Generally, if a defendant offers an explanation for his possession of the stolen property, the record must demonstrate that the explanation is false or unreasonable. *Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977). Whether a defendant's explanation for possession of recently stolen property is true or reasonable is an issue to be determined by the trier of fact. *Id.*; *Dixon v. State*, 43 S.W.3d 548, 552 (Tex. App.—Texarkana 2001, no pet.); *Marmon v. State*, 704 S.W.2d 90, 91 (Tex. App.—Dallas 1985, pet. ref'd).

Miller was robbed at gunpoint. Banda testified that, when he was robbed a few hours later, Mendoza displayed a gun during the robbery, but Sierra did not. Miller testified that the person who robbed her was thin and muscular and that Mendoza's physique matched that of her robber. Sierra was described as heavy-set. Photographs of both Mendoza and Sierra that were introduced into evidence confirm that Mendoza better fits Miller's description of the perpetrator. Miller testified that the robber ran away from her and that she did not see a vehicle. A few hours later, after Sierra had joined Mendoza, the two were seen in a truck that belonged to Sierra's family. While Sierra was heavy-set, without a weapon, and driving a truck, the person who

6

robbed Miller was thin, armed, and without a vehicle. Mendoza fits Miller's description; Sierra does not. Thus, the trial court could have found that, between Mendoza and Sierra, Mendoza was the person who robbed Miller.[4]

Viewing the evidence in the light most favorable to the verdict, we find the evidence legally sufficient for the trial court to find that Mendoza, and not Sierra, was the person who robbed Miller. Therefore, we overrule Mendoza's first point of error.

## II. The Clerk's Bill of Costs Supports the Order to Pay Court Costs

"A clerk of a court is required to keep a fee record, and a statement of an item therein is prima facie evidence of the correctness of the statement." *Owen v. State*, 352 S.W.3d 542, 547 (Tex. App.—Amarillo 2011, no pet.) (citing TEX. CODE CRIM. PROC. ANN. art. 103.009(a), (c) (West 2006)). "A cost is not payable by the person charged with the cost until a written bill is produced or is ready to be produced, containing the items of cost, signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost." TEX. CODE CRIM. PROC. ANN. art. 103.001 (West 2006). "In other words, a certified bill of costs imposes an obligation upon a criminal defendant to pay court costs, irrespective of whether . . . that bill is incorporated by reference into the written judgment." *Owen*, 352 S.W.3d at 547. Absent a certified bill of costs, the record is insufficient to support the assessment of court costs.

The clerk's record in this case did not originally include a bill of costs. Following the precedent of the Dallas Court of Appeals, we ordered the Dallas County District Clerk to prepare

---

[4]Further, while Mendoza was found with a large amount of cash, Sierra was found with only $195.00, including Banda's two two-dollar bills. As fact-finder, the trial court was free to reject Mendoza's explanation that he retrieved the money from the mother of his child, and could instead determine that the cash was gathered while robbing Miller.

and file an itemized bill of costs. *See Franklin v. State*, 402 S.W.3d 894, 895 (Tex. App.—Dallas 2013, no pet.). In response, we received an unsigned, unsworn computer printout supporting the amount of costs along with a "Bill of Costs" certification signed by the Dallas County District Clerk averring that the printout constitutes "costs that have accrued to date." The Dallas Court of Appeals has held that this type of filing constitutes a bill of costs. *Crain v. State*, No. 05-12-01219-CR, 2014 WL 357398, at *1 n.1 (Tex. App.—Dallas Jan. 31, 2014, no pet. h.) (mem. op., not designated for publication) (citing *Coronel v. State*, 416 S.W.3d 550, 555 (Tex. App.—Dallas 2013, pet. ref'd)).

Because the supplemental record contains a bill of costs supporting the amount assessed, Mendoza's court-costs issue is moot. *See Franklin*, 402 S.W.3d at 895. We overrule Mendoza's second point of error.

## III.   The Judgment Is Modified to Correctly Reflect Mendoza's Plea

Next, Mendoza argues that the trial court's judgment incorrectly states that he pled guilty to the offense. This Court has the power to correct and modify the judgment of the trial court for accuracy when the data and information necessary to do so are part of the record. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). The State concedes the error in the judgment and agrees that modification of the plea is required. Our independent review of the record confirms the same. We sustain Mendoza's third point of error.

**IV.     Conclusion**

Having sustained Mendoza's third point of error, we modify the trial court's judgment to reflect that he pled not guilty to the offense of aggravated robbery with a deadly weapon.

We affirm the judgment, as modified.


Jack Carter
Justice

Date Submitted:      March 3, 2014
Date Decided:        April 23, 2014

Do Not Publish